## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 11-10195-03 |
| | ) | |
| HAGOP N. SARKISSAN, | ) | |
| a.k.a. "Jack" | ) | |
| | ) | |
| Defendant. | ) | |

### UNITED STATES' MEMORANDUM IN SUPPORT OF SENTENCING

The United States respectfully submits this memorandum in support of sentencing for defendant HAGOP SARKISSIAN, a.k.a. "Jack," currently set for Thursday, January 16, 2014, at 2:00 p.m. As further described below, the government submits that the Court should sentence SARKISSIAN to a term of incarceration of 8 years (96 months), near the high-end of the applicable Sentencing Guideline Range.

## I. FACTUAL BACKGROUND[1]

Defendant HAGOP "Jack" SARKISSIAN received hundreds of pounds of high-grade marijuana from VREJ JARTIDIAN, a fugitive co-defendant and a member of an organized crime syndicate in Montreal, Canada. JARTIDIAN was also the marijuana supplier for the main defendant in this case, SAFWAN MADARATI. [PSR ¶ 158]. The shipments of marijuana were sent directly to SARKISSIAN's automotive business, Newton Automotive, located at 249 Centre Street, Newton, Massachusetts, which SARKISSIAN hid in the cars of unsuspecting auto-repairt customers. [PSR ¶ 185]. SARKISSIAN redistributed this marijuana to co-defendants JEFFREY SPINKS and VARTAN SOUKIASIAN. [PSR ¶¶ 177-78 and 183-85]. After the marijuana was

---

[1]The following facts are derived from the Presentence Report ("PSR") and the trial testimony from the trial of U.S. v. Martinez and Dzyhanikyan, 11cr1095-RWZ that took place on June 3, 2013.

sold, SARKISSIAN arranged for hundreds of thousands of U.S. dollars to be delivered to money couriers from Canada.  On three different occasions, SARKISSIAN directed SOUKIASIAN to deliver drug money to couriers at hotels in Cambridge and Boston. [PSR ¶ 186].

Prior to becoming involved with SARKISSIAN, SPINKS was an independent business owner; "TH" was car salesmen; and SOUKIASIAN ran a family owned towing company. SARKISSIAN, along with SAFWMAN MADARATI, got them involved in drug trafficking. SARKISSIAN was not only a drug trafficker; he was a mendacious con-artist.  SARKISSIAN enticed his co-conspirators, including JEFFREY SPINKS and "TH,"[2] to join his marijuana trafficking by first getting them into debt.  In 2008/09, "TH" loaned SARKISSIAN more than $50,000, but SARKISSIAN never repaid the debt and created stories and reasons as to why he could not reimburse "TH."  [PSR ¶ 196].  SARKISSIAN then persuaded SPINKS, a car customer of SARKISSIAN, to lend him hundreds of thousands of dollars for a Canadian gold venture that never produced any return.  [PSR ¶ 176].  In lieu of repayment, SARKISSIAN then convinced SPINKS and "TH" to sell and distribute large quantities of marijuana that SARKISSIAN obtained from VREJ JARTIDIAN in Canada.  [PSR ¶¶ 177, 197].  SARKISSIAN distributed hundreds of pounds of marijuana to SPINKS [PSR ¶ 178], and convinced "TH" to use "TH's" garage in Watertown to stash a large shipment of marijuana.  [PSR ¶ 197].  Over the course of several months, SARKISSIAN received and distributed at least 500 pounds of marijuana at his garage in Newton, high-grade marijuana worth as much as $2 million.  [PSR ¶¶ 178, 185].

On more than one occasion during the investigation, SARKISSIAN also used

---

[2]The full identity of "TH," as well as "AK," "MC," and "A" are indicated in the PSR, but are being withheld pursuant to LR 116.1(c)(1)(E).

intimidation, extortion, and acts of violence to protect his marijuana trafficking income.  In

December 2010, when SARKISSIAN learned that a Canadian male living in Florida, "AK,"

[PSR ¶ 179] had went behind his back to VREJ JARTIDIAN and threatened SARKISSIAN's

marijuana supplies and income, SARKISSIAN responded by sending individuals in Florida to

steal $90,000 and diamonds from "AK." [PSR ¶¶ 159, 189].

As the Court is well aware from the testimony of the June 3, 2013 trial in this matter, on

March 17, 2011, a young African American male fired multiple rounds into the glass door of

Cristofori's Jewelry Store in broad daylight in downtown Newton.  [PSR ¶¶ 122-126].  Three

innocent bystanders were inside, and could have very well been killed.  One adult female was

injured (believed to be grazed by a bullet) and young college-aged female, the daughter of the

owner of the store, had several lacerations (believed to be from the shattered glass door).  [PSR

¶ 125].

While there were others involved, the impetus behind the shooting that put the lives of

three innocent bystanders at risk was SARKISSIAN.  After the owner of the jewelry store,

"MC," stiffed SARKISSIAN for $700,000 worth of marijuana, SARKISSIAN contacted

SAFWAN MADARATI, who in turn put SARKISSIAN in touch with co-defendants SANUSIE

MO KABBA and RONALD MARTINEZ.  [PSR ¶ 160].  In exchange for marijuana and a

Range Rover, SARKISSIAN hired KABBA and MARTINEZ to shoot up the "MC's" jewelry

store to send a message.  [PSR ¶ 124].  After the shooting, SARKISSIAN and his cousin "A"

toted firearms around Newton Automotive [PSR ¶ 187], and then took off for Florida with

$50,000 in cash.  [PSR ¶ 126].

Defendant HAGOP "Jack" SARKISSIAN pled guilty the day of trial on June 3, 2013, to

marijuana trafficking and extortion.  During his plea colloquy, SARKISSIAN admitted to

threatening "MC" and receiving at least a couple hundred pounds of marijuana.  SARKISSIAN

was released pending sentencing over the government's objection.

## II. U.S. SENTENCING GUIDELINES

### A.    Relevant Conduct – USSG §1B1.3

At sentencing, a defendant is not only responsible for his own direct actions; he is also

responsible for his relevant conduct.  "[I]n the case of a jointly undertaken criminal activity," this

conduct includes "all reasonably foreseeable acts and omissions of others in furtherance of the

jointly undertaken criminal activity."  USSG §1B1.3(a)(1)(B);  United States v. Damon, 595

F.3d 395 (1st Cir. 2010)(defendant held responsible not only for one gun he personally possessed,

but also two other guns where defendant was engaged in a joint criminal undertaking with co-

defendants to obtain three guns at pawnshop).

At sentencing, the court "is required to make an individualized finding as to [the conduct]

attributable to, or foreseeable by, that defendant."  United States v. Colon-Solis, 354 F.3d 101,

103 (1st Cir. 2004).   In doing so, "the district court must determine (1) the scope of the joint

criminal activity explicitly or implicitly agreed to by [the defendant] jointly with others; (2)

whether the criminal acts proffered as relevant conduct were in furtherance of the jointly

undertaken criminal activity; and (3) whether the proffered acts were reasonably foreseeable in

connection with that criminal activity." United States v. Carrozza, 4 F.3d 70, 76 (1st

Cir.1993)(cited in United States v. Caba, 241 F.3d 98, 101 (1st Cir.2001)).


### B.    Sentencing Guideline Calculations.

"The district court is required to calculate the defendant's guidelines sentencing range

before exercising its discretion." United States v. Tavares, 705 F.3d 4, 25 (1st Cir.), cert denied

133 S.Ct. (May 13, 2013).  First, without objections from the Defendant,[3] the PSR in this case

found that SARKISSIAN is conservatively responsible for about 450 pounds of marijuana (204

kilograms), resulting in base offense level of 28. [PSR ¶ 209].  This evidence is based on

information for four different cooperating witnesses, MADARATI, SPINKS, SOUKIASIAN,

and "TH."

Second, the PSR found that the offense level should be increased by 2-levels because

SARKISSIAN's offense of conviction involved the possession of a firearm, resulting in offense

level 30.  [PSR ¶ 210].  Under USSG § 2D1.1(b)(1), a defendant's offense level is required to be

increased by 2-levels "[i]f a dangerous weapon (including a firearm) was possessed."  USSG §

2D1.1(b)(1).  The commentary to this Guideline provision states that "[t] he enhancement should

be applied if the weapon was present, unless it is clearly improbable that the weapon was

connected with the offense."  USSG § 2D1.1 (comment. n. 11(A)).  In this case, two sets of

firearms apply.  First, based on the information that both SOUKIASIAN and "TH" have

provided, SARKISIAN and his cousin "A" personally possessed firearms inside Newton

Automotive around the time of the shooting at Cristofori's Jewerly Store. [PSR ¶ 187].  Second,

the Jewelry Store shooting clearly involved a firearm, and the use of a firearm, that was

reasonably foreseeable to SARKISSIAN, and within the scope of his conspiratorial agreement.

See USSG § 1B1.3.

Third, the PSR also found that SARKISSIAN's offense level should be increased by an

additional 2-levels because SARKISSIAN employed violence and credible threats of violence

during the course of SARKISSIAN's participation in the drug conspiracy, resulting in offense

---

[3]While the defendant has not filed any objections, the government assumes that defendant will not be agreeing to any of the facts in the PSR and will claim that he pled guilty to different drug conspiracy in which he was materially less culpable than has been alleged.

level 32.  Under USSG § 2D1.1(b)(2), a defendant's offense level is increased by 2-levels if the

defendant "used violence, made a credible threat to use violence, or directed the use of

violence[.]"  USSG § 2D1.1(b)(2).  Here, the threats of the violence and use of violence are

clear.  SARKISSIAN was the catalyst in the shooting at Crirstofori's Jewelry Store, and by his

own admission at the plea hearing, threatened Cristofori himself before the shooting.  The

guidelines also make clear that the simultaneous increase of 2-levels for the possession of a

firearm and another 2-level increase for use of violence with that same firearm does not amount

to "double-counting."  See USSG § 2D1.1 (comment. n. 11(B))(The enhancements in

subsections (b)(1)

and (b)(2) may be applied cumulatively (added together)").

Fourth, the PSR found that SARKISSIAN's offense level should be decreased by 2-levels

for acceptance of responsibility under USSG § 3E1.1(a).  The government will not be moving for

a further 1-level reduction for acceptance of responsibility because SARKISSIAN was poised for

trial under the day before, and only pled guilty the day of trial.   Furthermore, while the

government did not submit an objection, recent events substantially call into doubt whether

SARKISSIAN has truly accepted responsibility.  In the event that Defendant seeks to convince

this Court that he pled guilty to a different marijuana conspiracy that significantly differs from

the information from the PSR should call into question the appropriateness of any acceptance of

responsibility reduction.

Accordingly, the government submits that the total offense level should be as follows:

BOL  =  28 (100 and 400 kgs of marijuana)

+2 (possession of a firearm under 2D1.1(b)(1))

+2 (use of violence and credible threats of violence under 2D1.1(b)(2))

-2 (acceptance, if applicable)

=      30 (GSR: 78-97 months)

**C.     The Government Sentencing Recommendation.**

The government submits that unlike most federal drug prosecutions, the low-end of the

U.S. Sentencing Guidelines truly understates the significance of SARKISSIAN's criminal

conduct.  In determining the appropriate sentence, the Court is required to first look at not only

the "nature and the circumstances of the offense," but the "history and characteristics of the

person."  See 18 U.S.C. § 3553(a)(1).  As indicated above, SARKISSIAN was not only a drug

dealer, but a mendacious con-artist who stole hundreds of thousands of dollars in money from

others and induced them get involved in his marijuana trafficking activities to service his own

increasing debts.  SARKISSIAN brought SPINKS, SOUKIASIAN, and "TH" into his drug

conspiracy, not the other way around as the government expects Defendant to argue.

SARKISSIAN was also the catalyst for the Cristfori's shooting.  The drug debt was his

drug debt, and it was SARKISSIAN who used "TH" to distribute $700,000 worth of marijuana

to "MC."  Instead of doing the dirty work himself, he hired others to get the job done in

furtherance of his own selfish criminal endeavors.   A significant period of incarceration is,

therefore, necessary to deter not only SARKISSIAN - who has demonstrated a lack of

acceptance of responsibility - but others who may choose to enforce drug debts through the use

of violence.

Based on the foregoing, the government respectfully submits that the Court should

sentence Defendant HAGOP "Jack" SARKISSIAN to period of incarceration for 8 years (96

months), a sentence at the high-end of the Sentencing Guideline range.  The government further

notes under the 18 U.S.C. § 3143(a)(1-2), the Court is required by law to detain Defendant.

Upon the imposition of sentence and acceptance of SARKISSIAN's guilty plea, the statute

provides that the Court shall detain the Defendant.

## CONCLUSION

Accordingly, the government respectfully submits the foregoing memorandum of law and

fact in support of the sentencing for Defendant HAGOP N. SARKISSIAN, a.k.a. "Jack" on

January16, 2014.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney


By:    /s/ *Neil Gallagher*
Neil J. Gallagher, Jr.
Michael Yoon
Assistant U.S. Attorneys

Date Submitted:  January 16, 2014



Certificate of Service

I hereby certify that this document filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).


*/s/ Neil J. Gallagher, Jr.*
Neil J. Gallagher, Jr.