**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| v. | No. 1:11-cr-10195-RWZ-3 |
| **HAGOP N. SARKISSIAN,** Defendant. | |

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Hagop "Jack" N. Sarkissian ("Sarkissian" or "the defendant"), by and through his undersigned counsel, hereby respectfully submits this Memorandum to assist this Honorable Court in making a determination of the appropriate sentence. Nothing in this Memorandum is intended to excuse the conduct of the defendant; he realizes it is inexcusable, acknowledges responsibility, and apologizes. He pled guilty because he was guilty. He participated in the two conspiracies to which he pled guilty. He is not challenging the weight of marijuana attributed to him. Nor that he was involved in an extortionate conspiracy, but he exercises his right to tell this Court with more specificity what he actually did, and did not do. This Memorandum then, is being offered to assist this Honorable Court in properly placing the defendant, and his actual offense conduct within the context of 18 U.S.C. §3553(a) in order to fashion an appropriate sentence.

For the reasons set forth below, the defendant, requests that he be sentenced to a period of five years incarceration, an appropriate period of supervised release, the requisite special assessments, and a special condition that he receive a judicial recommendation to participate in the Bureau of Prisons Residential Drug Abuse Program ("RDAP") if found to be eligible, given

the violent component of count 2-s, and to be designated to serve his time at an institution where the program exists. On behalf of the defendant, undersigned counsel respectfully suggests that this sentence is "sufficient, but not greater than necessary" to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2), reflecting the seriousness of the offense, while promoting respect for the law, and providing a just punishment within the context of his offense conduct and consideration of his personal characteristics. Respectfully, the proposed sentence also has parity with the sentences imposed on the various co-defendants. This recommendation is predicated upon the mitigation provided by the defendant's personal history, characteristics, and state of mind at the time of the offense, all of which will be more fully discussed *infra*. Additionally, while his behavior was not "aberrant" as that term is understood in the U.S.S.G. model, it certainly represents a significant departure from the otherwise law-abiding life he had led. And, again, on his behalf, your undersigned counsel reiterate that the defendant assumes full legal and moral responsibility for the offense conduct contained in the indictment to which he has pled guilty.

## **PROCEDURAL HISTORY**

On April 20, 2011, a Complaint was filed in this Court alleging Hagop Sarkissian's involvement in a Conspiracy to Distribute Marijuana and a Conspiracy to Collect a Debt by Extortionate Means. That same day, an arrest warrant was issued, and he was taken into custody the next day, April 21, 2011, and an Initial Appearance was conducted. Sarkissian was held pending a detention hearing. The detention hearing was conducted over the course of two days, from April 27 to April 28. The defendant continued to be held while the Court took the matter

under advisement. On May 5, 2011, Sarkissian was released on an Appearance Bond and conditions.

On May 19, 2011, an eight count Indictment was filed charging Sarkissian with one count of Conspiracy to Distribute at least 1,000 Kilograms of marijuana, oxycodone, and cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(B), and one count of Conspiracy to Collect a Debt by Extortionate means, in violation of 18 U.S.C. § 894(a). He was arraigned on June 2, 2011, entered a plea of not guilty, and re-released on an Appearance Bond and conditions.

On August 23, 2012, an eleven count Superseding Indictment was filed charging the defendant with the same two counts previously alleged in the original Indictment. On September 27, 2012, the defendant was arraigned, entered a plea of not guilty, and re-released on an Appearance Bond and conditions.

On June 3, 2013, the defendant changed his plea to guilty pursuant to Rule 11. No plea agreement was entered into. He was permitted to continue re-released on an Appearance Bond and conditions pending sentencing, which is scheduled for January 16, 2014. Sarkissian has remained in compliance with his conditions of release.

A presentence investigation report ("PSR") was prepared by the U.S. Probation Department on December 12, 2013. A revised PSR was provided by Probation on January 8, 2014. The revised PSR suggests a TOL of 28 and an advisory guideline range of incarceration for 78 to 97 months. As noted in the defendant's objections to the PSR, Sarkissian and undersigned counsel believe the correct TOL is 26 and guideline range 63 to 78 months.[1] However, the defendant respectfully requests that the Court exercise its considerable discretion

---

[1] The defendant, in his PSR response, had opined that a TOL of 24 might also be appropriate, given his minimal role in the enterprise. He withdraws this request.

and impose a sentence below the advisory guideline range, specifically, a 60 months term of imprisonment followed by an appropriate period of supervised release with a judicial for a recommendation for designation to a facility with RDAP, contingent, of course, upon whether he will be eligible for same given his plea to count 2s. The defendant contends that an analysis of the factors contained in 18 U.S.C. § 3553(a) supports his request for the below-guidelines sentence.

**BACKGROUND OF DEFENDANT AND OFFENSE CONDUCT**

The defendant is a 49 year old single male living in a two family home in Watertown, Massachusetts. His elderly parents, for whom he substantially provides care for, live in the other unit of the two family home. He is the second of four children, and immigrated to the United States from Syria with his parents as a child, eventually becoming a U.S. citizen in 1978 at or about age fourteen. The defendant attended, and graduated from Watertown High School. He is the father of one (1) child, a son, who resides with his mother in California. The defendant remains in contact with his son, and sends money to his mother when he can. The defendant has supported himself since at least 1996 through automotive repair and sales at various shops/garages which he owned and/or operated. While he has an arrest record, any and all related charges related to such incidents were ultimately dismissed or nol prossed, and he has no convictions. Aside from the instant offense, he has been a law-abiding citizen seeking only to make a modest living for himself, and support for his family. Prior to his arrest, he was engaged to be married. However, knowing the potential consequences he faced, he made decision to end the engagement in the hope that his fiancée would be able to move on and not be unduly burdened by his situation.

The defendant respectfully suggests that an appropriate application of 18 U.S.C. § 3553(a) factors to the circumstances herein should result in the sentence requested by the defense. The §3553(a) factors generally include (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide the defendant with needed educational or vocational training or medical care, (3) the kinds of sentences available, (4) the kinds of sentence and the sentencing range established by the United States Sentencing Guidelines, (5) any pertinent policy statement, (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and (7) the need to provide restitution to any victim of the offense 18 U.S.C. §3553(a).

With regard to the United States Sentencing Guidelines, the district court, while not bound by them, still must consult and consider then when imposing sentence. *United States v. Booker*, 543U.S. § 20 at 264. Courts of Appeals cannot disturb a district court's sentence unless the appellate court finds that sentence unreasonable. *See id.* The United States Supreme Court clarified post-*Booker* sentencing procedure in *Gall v. United States*, 128 S. Ct. 586. The *Gall Court* indicated that when sentencing a defendant,

> [A] District court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing so, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one.

After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.

128 S Ct. 596-597 (internal citations and quotation admitted). The Supreme Court re-emphasized the point stating. "[T]he sentencing court does not enjoy the legal presumption that the Guidelines sentence should apply." Nelson v. United States, 129 S. Ct. 890 (2009), quoting Rita v. United States, 551 U.S. 338, 127 S. Ct. 2456 (2007).

While the First Circuit has noted that sentencing courts must employ "an increased degree of justification commensurate with an increased degree of variance" from the advisory sentencing guideline range, it has also held that under a post-*Gall* rubric, "there is no stringent mathematical formula that cabins the exercise of the sentencing court's discretion. Indeed, after *Gall*, the sentencing inquiry-once the court has duly calculated the GSR-ideally is broad, open-ended, and significantly discretionary. At that point, sentencing becomes a judgment call, and a variant sentence may be constructed based on a complex of factors whose interplay and precise weight cannot even be precisely described." *United States v. Martin*, 520 F.3d 87, 91-92 (1st Cir. 2008) (internal citations and quotations omitted)(affirming a 91-month downward departure from the advisory sentencing guideline range).

In requesting this sentence, the defendant offers no excuses for his conduct. He knows and appreciates the wrongfulness of his actions and fully accepts responsibility therefor. He respectfully requests that this Court consider, and incorporate herein by reference, his objections to "The Offense Conduct" contained within the PSR.[2] While this Honorable Court may believe that the defendant is shirking responsibility for his involvement in the drug

---

[2] The only objection material to the TOL and advisory guideline level is contained in paragraphs 27 and 30 and relates to the (non)involvement of a dangerous weapon (gun). The defendant suggests that a TOL of 26, rather than 28, is appropriate.

conspiracy by objecting to and/or denying many of the allegations contained within the PSR relates to offense conduct, the defendant is a man of pride and principle who cannot in good conscience admit to conduct in which he did not participate. He agreed regrettably, to collect a drug debt for Madarati, he permitted marijuana to be stored in his shop, for his vehicle to be used to transport marijuana – he is part of the overall conspiracy and it was, or should have been, evident to him that the marijuana conspiracy involved in excess of 1000 kilograms of marijuana. He facilitated both conspiracies. The defendant believes that was the worst decisions he has ever made in his life, but again, he takes full responsibility for them and accepts his punishment. Ironically, rather than being the violent, aspiring drug dealer pictured by the array of cooperating witnesses who themselves are essentially auditioning for sentences measured in days or months, rather than in years, he has no history of drugs, violence, and only knew Madarati for a total of approximately 50 days - unlike the cooperating witnesses receiving significant leniency who were figuratively in bed with Madarati for years.

While the defendant respectfully suggests (and did suggest in his PSR Response) that the Court would be justified in adjusting his GSR downward for his minor role in the conspiracies pursuant to USSG § 3B1.2, he is not actually requesting it do so-rather simply to recognize, in the overall, § 3553(a) analysis, that his culpability is equal or less than most of the other codefendants as well as perpetrators of comparable crimes. *See United States v. Mateo-Espejo,* 426 F.3d 508, 512 (1st Cir. 2005). Again, interestingly, only the cooperating witnesses identify Sarkissian as being at the center of this drug enterprise. There is virtually no other corroboration of this level of involvement by him. It is only in their self-serving statements that Sarkissian is allegedly repeatedly handled drugs or weapons. In truth, his co-conspirators had far more extensive and/or managerial involvement, including masterminding and/or carrying

7

out the scheme and its ongoing operation. Sarkissian's sin was presumably in allowing it to proceed in his midst with his tacit assistance, and by essentially providing a base of operations at different times. Even a defendant who has performed a "limited function" similar to that of "a defendant who is convicted of a drug trafficking offense whose role in that offense was limited to transporting or storing drugs" has been found eligible for a minor role adjustment. *See United States v. Munoz Franco*, 356 F. Supp. 2d 20 (D.P.R. 2005). And the sentences already imposed in this case - Vartan Soukassin - 30 days BOP, 3 months (of 2 year Supervised Release) in Home Dentention; Antranic Idanjian - 3 years probation; Robert Johnson – time served (7 day) plus 4 years Supervised Release; Jeffrey Sprinks – 30 days BOP, 3 months Home Detention (of 2 years Supervised Release); Victor Loukas – 1 year and 1 day BOP, 3 years Supervised Release; and many others who generally pleaded to the cocaine and oxycodone components of the conspiracy and whose cases/sentencing are pending. These were all collectively, the people who quite literally "made out like the bandits" they actually were.

In short, it is clear that Madarati effectively was the manager, who, with others, truly manipulated Sarkissian. Sarkissian very rarely comes up on any intercepted phone calls. And again, he only even knew Madarati for approximately fifty days – less than two months. All while he stands before this Court faced with a five year mandatory minimum sentence, several of his co-conspirators, above, who have pled guilty to the same Count 1 of the original or Superseding Indictment pursuant to plea agreements, as noted above, have avoided the mandatory minimum sentence, and were sentenced to anywhere from time served of three days, seven days, thirty days, to one year and one day, and up to forty-two (42) months,[3] because they were intimately involved in the conspiracy and had information to trade. Sarkissian on the other hand, did not meet Madarati until late February 2011 and was arrested April 21, 2011. He was a

---

[3] It is noted that Madarati has recently been sentenced to 144 months.

member of the conspiracy that spanned years for a mere fifty-some-odd days. He had no information to trade because, unlike his co-conspirators, he was a minor player.

Given that his co-conspirators were given such lenient sentences in the face of a five year mandatory minimum, albeit as the result of plea agreements that surely involved 5k1.1 departures, Sarkissian should arguably face a sentence only slightly longer than such co-conspirators; §3553(a)(6), calls for the need to avoid unwarranted sentence disparities among defendants with similar records found guilty of similar conduct. Sarkissian, previously having been an otherwise law-abiding citizen, has no record. Yet because he had no information to trade faces a very disparate sentence compared to that of many of his co-conspirators. He accepts this reality, and understands his own mistakes that have led him to this fate. However, in light of the foregoing, the defendant respectfully suggests that the Court should not sentence him to even a day beyond the required five year mandatory minimum.

The defendant wishes the Court to consider that, under the circumstances, the sentence requested by the defense is, in fact, sufficient to meet the purposes prescribed by 18 U.S.C. §3553(a)(2). A felony conviction, particularly to a man such as the defendant, a proud man, who is deeply tied to a proud immigrant community, is a terrible burden that he will have to answer for, in various contexts, for the rest of his life. Thus, there is a general deterrence in the sentence as the message is sent that violating the law will be punished with substantial consequences, loss of liberty, reputation, and separation from loved ones. Specific deterrence already has been met as the defendant came to realize the devastating impact his behavior has had, not only upon him, but also upon his family, particularly his elderly and infirmed parents for whom he cares, his child whom he supports, and his now ex-fiancé. The public is not in need of protection from the defendant – despite his co-conspirators' self-serving allegations –

he is not aggressive, violent or prone to harm anyone, and not a risk to re-offend. The requested sentence is sufficient, but not greater than necessary, to comply with the purposes set forth in the 18 U.S.C. §3553(a)(2).

In fact, the First Circuit has summarized the central principles of the post-Booker and *Gall* sentencing procedure described above, as follows:

> In the last analysis, a sentencing court should not consider itself constrained by the guidelines to the extent of that they are sound, case-specific reasons for deviating from them. Nor should a sentencing court operate in the belief that substantial variances from the guidelines are always beyond the pale. Rather, the court "should consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue."

*United States v. Martin*, 520 F. 3d 87, 91 *(1st Cir. 2008) (quoting Gall, U.S. at 52).*

Lastly, the defendant requests that in fashioning his sentence, this Honorable Court take into account the defendant's elderly and infirmed parents. Every day beyond the five year mandatory minimum which this Court sentences Sarkissian is another day through which his parents will have to struggle without the support of their son, on which they have come to rely upon almost completely for daily needs. Far more troubling for Sarkissian, is that every day he is away from them increases the chances that he will never see them again.

For the foregoing reasons, Hagop "Jack" Sarkissian respectfully asks the Court to impose the requested sentence of five years followed by an appropriate term of Supervised Release. In light of the facts and circumstances of the offense conduct and of this defendant, the proposed sentence is sufficient, but not greater than necessary, to comply with the purposes

set forth in the statute at 18 U.S.C. §3553(a)(2) and it is the most fair and just resolution of the competing demands facing the Sentencing Court. This is particularly true, where as here, a conviction for count 2-s will, because of the "violence" attributed to a Conspiracy to Collect a Debt by Extortionate means, likely result in disqualification for certain BOP programs (eg. 500 hours RDAP Substance Abuse Program) and very well result in a higher security classification and placement.

Dated: January 15, 2014

Respectfully submitted,
HAGOP N. SARKISSIAN
By and through his attorneys,

/s/ *Jeffrey A. Denner*
Jeffrey A. Denner, BBO#120520
DENNER♦PELLEGRINO, LLP
Four Longfellow Place, 35th Floor
Boston, Massachusetts 02114
Tel.   617.227.2800
Fax.   617.973.1562
jdenner@dennerpellegrino.com

**Certificate of Service**

I, Jeffrey A. Denner, hereby certify that on this the 15th day of January 2014, I caused a true copy of the foregoing *Defendant's Memorandum in Aid of Sentencing* to be served upon all necessary parties to this matter by virtue of electronically filing the same via the CM/ECF system.

/s/ *Jeffrey A. Denner*
Jeffrey A. Denner